**Walter E. EDWARDS, Plaintiff–Appellee,**

v.

**Veronica CABRERA and Harry T. Redmond, Defendants–Appellants.**

**No. 94–3205.**

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1995.

Decided June 20, 1995.

Gregory E. Kulis (argued), Kathleen T. Coyne, Chicago, IL, for Walter E. Edwards.

Marshall L. Blankenship, Jeffrey E. Schiller (argued), Michael F. Braun, Schuyler, Roche & Zwirner, Chicago, IL, Barbara M. Meyer, Mark S. Stein, Office of Corp. Counsel, Village of Skokie, Skokie, IL, for Veronica Cabrera, Harry T. Redmond.

Before RONEY,* BAUER, and EASTERBROOK, Circuit Judges.

BAUER, Circuit Judge.

Walter Edwards brought this § 1983 action against two officers of the Skokie (Illinois) Police Department claiming that he was falsely arrested, in violation of the Fourth and Fourteenth Amendments. Edwards also included a state law claim for false imprisonment. Both parties moved for summary judgment on both counts. The district court held that the officers did not have probable cause to arrest Edwards; it also held that the officers were not entitled to qualified immunity. The district court granted Edwards' motion for summary judgment and denied the officers' motion with respect to this count. The district court denied both parties' motions regarding the second count. The officers filed this interlocutory appeal challenging the holding below regarding the

* The Honorable Paul H. Roney, Judge of the United States Court of Appeals for the Eleventh Circuit, is sitting by designation.

false arrest count. Because we believe that the officers had probable cause to arrest Edwards, we reverse.

On the evening of May 13, 1992, the Skokie Police Department received a call from a dispatcher for PACE, a suburban Chicago public bus transit agency. The dispatcher reported that a PACE bus driver thought he had seen a drug transaction involving five black men at the Greyhound bus station in Skokie; the dispatcher did not provide the police with the bus driver's name. Veronica Cabrera, a Skokie police officer who was in uniform and patrolling the area in her squad car, arrived at the bus station within three minutes of the dispatcher's call.

When she arrived, Cabrera saw four black men standing together outside the bus station. One was Walter Edwards and another was his brother Eugene Edwards. The group disbanded as Cabrera arrived. Eugene boarded a bus, and Walter walked toward a parked car. As Walter walked toward the car, Cabrera approached him and asked if she could speak with him. Walter agreed and told Cabrera that he was at the bus station to drop off his brother who had boarded a bus destined for Forest City, Arkansas. Cabrera then asked Walter to accompany him to the bus, which he did.

Cabrera boarded the bus and asked Eugene, by name, to step off the bus, which he did. Cabrera suspected that Eugene was nervous about this encounter; she noticed a wet spot on the front of his trousers which she attributed to Eugene urinating as a result of his nervousness. At this point, Harry Redmond, also a Skokie police officer, arrived at the bus station in his squad car.

Cabrera then asked both brothers for identification. In response, Eugene fetched a garment bag and produced his identification. Cabrera asked Eugene if she could search his bag and he consented. Inside Eugene's garment bag, Cabrera found two self-sealing plastic bags containing an unspecified amount of a substance that appeared to be marijuana. Apparently, Eugene had good reason to be nervous.

Cabrera and Redmond then arrested Eugene and also arrested Walter. The officers transported the Edwards brothers to the Skokie police station, but Walter was released some time thereafter without being charged. It is the propriety of Walter's arrest that is at issue here.

Walter alleged in the first count of his complaint that the officers had falsely arrested him; count two alleged a state law tort of false imprisonment. The district court denied both parties' summary judgment motions with respect to the second count, but granted Edwards' motion for summary judgment on count one. It held that not only did the officers lack probable cause to arrest Edwards, they were not entitled to qualified immunity from Edwards suit because no reasonable officer in their shoes would have believed that Edwards' arrest was supported by probable cause.

The officers filed this interlocutory appeal challenging the district court's grant of summary judgment to Edwards on the issue of qualified immunity with respect to the count alleging false arrest. We have jurisdiction to hear such an appeal, *Marshall v. Allen*, 984 F.2d 787, 789 (7th Cir.1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985)), and finding that the officers had probable cause to arrest Edwards, we reverse.

"Qualified immunity shields [officers] from suit for damages if 'a reasonable officer could have believed [Edwards' arrest] to be lawful, in light of clearly established law and the information the officers possessed.'" *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). In this case, the officers are entitled to qualified immunity if they had probable cause to arrest Edwards. The officers had probable cause " 'if the facts and circumstances within their knowledge ... were sufficient to warrant a prudent man in believing' [Edwards] had violated the law." *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964)). We determine whether the officers had probable cause to arrest Edwards based on the information available to them at the time they made the arrest. *Id.; Brinegar v. United*

*States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949). Even if probable cause was lacking with respect to this arrest despite the officers' subjective belief that they had probable cause, they are entitled to immunity as long as their belief was objectively reasonable. *Hunter,* 502 U.S. at 227, 112 S.Ct. at 536 (citing *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815).

■ There has been some tension identified in our cases with respect to the proper standard of review in qualified immunity cases in which probable cause is at issue. *See Maltby v. Winston,* 36 F.3d 548, 555–56 n. 7 (7th Cir.1994) (criticizing *Mahoney v. Kesery,* 976 F.2d 1054 (7th Cir.1992)). In this case, however, there is no question as to the standard of review. Since we are reviewing the district court's grant of summary judgment, the issues are ones of law which we review *de novo.*

■ In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court rejected a rigid, rule-based approach to determining probable cause in situations in which the police officers receive a report of criminal activity by an informant. In that case, police received a letter from a completely anonymous informant detailing certain criminal activities (not surprisingly, drug offenses) about to be perpetrated by a married couple. Under the two-pronged test advanced by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), this anonymous tip would have been excluded from the determination of probable cause. The first prong of the test required that the police establish the informant's "reliability," "veracity," and "basis of knowledge;" if they could not do so, the tip could not support a finding of probable cause. Obviously, police cannot establish any of these three characteristics with respect to an anonymous tipster.

The Court overruled *Aguilar* and *Spinelli* and instead held that the proper approach is an evaluation of the totality of the circumstances in cases such as these to determine probable cause. *Id.* at 238, 103 S.Ct. at 2332. The Court directed that not only are the informant's "reliability," "veracity," and "ba-

sis of knowledge" to be considered, but also the degree to which the investigating officers can corroborate the tip. *Id.* at 244–45, 103 S.Ct. at 2335; *United States v. Towns,* 913 F.2d 434, 440 (7th Cir.1990). The import of *Gates* is that whether officers had probable cause to arrest is to be considered in light of all information available to them at the time of the arrest, including the tip itself together with knowledge of the informant, any corroboration of the tip, and any other information uncovered by or related to the arresting officer.

In its order, the district court traversed much of the substantial precedential territory addressing tips by informants that has developed since *Gates.* It held, however, that the officers did not have probable cause to arrest Edwards. The district court based its conclusion on its determination that the tip was essentially anonymous and that the officers could not corroborate it at all. It then explicitly eliminated the tip from its evaluation of the "totality of the circumstances." Eliminating the tip and other important facts left the court with only two factors for its probable cause determination: a group of four black men and two packages of a substance believed to be marijuana. With just that, the district court concluded that the officers lacked probable cause. We cannot say that we disagree with that conclusion using only these two factors, but we do disagree with the exclusion from consideration of a number of critical facts that were known to the officers at the time of the arrest.

Without mentioning the cases, the district court appeared to follow the two-pronged test of *Aguilar* and *Spinelli* explicitly rejected in *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332. The district court found the tip wanting in certain areas and therefore excluded it from its calculus. *Gates* and its progeny, however, demand that we consider all the facts available to the police at the time of the arrest, even those that may, in and of themselves, be deficient in some way. We turn then to the set of facts available to the officers in this case.

Of paramount importance is the tip itself. As the Court in *Gates* stated: "Seemingly

innocent activity [becomes] suspicious in light of the initial tip." 462 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13 (citing *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)). Here, the tip was that five black men were gathered at the bus station to conduct a drug transaction. It came from a bus driver who saw this event. It is true that he did not describe the situation in laborious detail, but he observed something amiss and reported it.

Regarding the reliability of the informant, we have noted that "a citizen informant is inherently more reliable than the usual police informants who are often mired in some criminal activity themselves." *Towns,* 913 F.2d at 441 (citing *United States v. Rowell,* 612 F.2d 1176, 1178–79 n. 4 (7th Cir.1980)). In addition, the Supreme Court indicated in *Gates,* 462 U.S. at 233–34, 103 S.Ct. at 2329–30, that a citizen who faces potential repercussions from making a false report is more likely to serve as a reliable informant. The informant in this case demonstrated similar indicia of reliability and veracity.

The bus driver was not anonymous; while the police did not know his name, we can presume his identity was (and is) easily ascertainable by the officers. The officers also knew his occupation. These characteristics permit certain inferences regarding his reliability. The fact that he is gainfully employed as a bus driver indicated to the officers that he probably was not a random criminal. Further, it seems reasonable for the officers to presume that the bus driver's employer would not look favorably upon an employee who fabricates a report to the police and uses the bus company's dispatcher to do so. This must have appeared to the police as a citizen legitimately reporting what he believed to be criminal activity.

Having established that the tip itself is a crucial component of the probable cause evaluation, we address the corroboration gained by the officers and how it impacts upon probable cause. Cabrera saw the reported group of black men, two of whom were the Edwards brothers. Then, upon questioning by Cabrera, Walter Edwards admitted his relationship with his brother and that he was talking with Eugene in a group. The final

piece of the puzzle was the discovery, with Eugene's consent, of the marijuana. Here, Cabrera and Redmond had a tip which appeared reliable which they then substantially corroborated; indeed, they found the very drugs they believed to be the subject of the reported transaction. At that point, the officers had probable cause to arrest Walter Edwards.

As it turned out, the officers subsequently released Walter Edwards because they believed they lacked evidence sufficient to convict him. But, "probable cause ... means less than evidence which would justify condemnation.... It imports [an arrest] made under circumstances which warrant suspicion." *Brinegar,* 338 U.S. at 175 n. 14, 69 S.Ct. at 1310 n. 14 (quoting *Locke v. United States,* 11 U.S. (7 Cranch) 339, 348, 3 L.Ed. 364 (1813)). Moreover, the officers' belief that Edwards committed an offense need not be more likely true than false. *See Hughes v. Meyer,* 880 F.2d 967, 969 (7th Cir.1989) (citing *Brinegar,* 338 U.S. at 175–76, 69 S.Ct. at 1310–11). Certainly, these were circumstances which warranted suspicion on behalf of the officers that Edwards had committed a drug offense and provided them with probable cause to arrest Edwards.

Our conclusion that the officers had probable cause to arrest Edwards dictates that Edwards does not have a viable § 1983 claim. Even if we have somehow erred in drawing this conclusion, our analysis demonstrates that the question is enough of a close one to render a possible mistake by the officers a reasonable one. We therefore REVERSE the district court's order finding no probable cause in Walter Edwards' arrest and denying the officers qualified immunity and REMAND this case to the district court for further proceedings consistent with this opinion.