**Paula TAYLOR, Plaintiff,**

v.

**J.A. PALADINES and The Village of Oak Park, a municipal corporation, Defendants.**

**No. 96 C 4501.**

United States District Court, N.D. Illinois, Eastern Division.

Oct. 28, 1997.

protected by the affirmative defense of qualified immunity.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper under Rule 56(c) when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate the absence of a genuine issue of material fact." Fed.R.Civ.P. Rule 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). While all inference from the record must be made in a light most favorable to the non-moving party, this Court is not required to draw "every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## III. FACTUAL BACKGROUND

### A. PURSE SNATCHING

We draw our version of the facts from the parties' Local Rule 12 submissions. On April 8, 1995, Jennette Slaughter's purse was stolen in Oak Park by an African–American male who fled the scene in a blue Buick with Illinois license KSB892. Def.'s Rule 12(m) Ex. A. A check of the license plate registrations revealed that Rashaudra Young ("Young") owned the vehicle. When Oak Park Police could not locate Young at her last known address of 4401 North Clark Street in Chicago, they notified the Chicago Police Department of the vehicle's and suspect's descriptions. 12(m) ¶ 8.

### B. CHECK PASSING

On April 21, 1995, Slaughter, an African–American female, informed the Oak Park Police Department that a personal check

Jeffrey Cole, Seth N. Kaberon, Cole & Staes, Ltd., Chicago, IL, for Plaintiff.

John B. Murphey, Coblentz & Janega, Chicago, IL, for Defendants.

*MEMORANDUM OPINION AND ORDER*

MORTON DENLOW, United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Paula Taylor ("Taylor") filed a one-count First Amended Complaint against defendants J.A. Paladines ("Paladines"), an Oak Park police detective, and the Village of Oak Park ("Village"), under 42 U.S.C. § 1983 alleging that defendants violated her constitutional rights by reason of an illegal arrest and detention.[1] Taylor withdrew her complaint against the Village. For the reasons stated below, the Court grants Paladines' motion for summary judgment because he is

---

1. The issues of illegal search, severe humiliation, emotional distress, and lack of *Miranda* warning raised in Taylor's First Amended Complaint are

part of the false arrest claim for the issue of damages only (see Pl.'s Mem. in Opp'n to Def.'s Mot. for S. J., 11–12).

from her stolen purse was used on April 8 to purchase electronic equipment at a Silo store in Evanston. 12(m) ¶ 9; 12(n) ¶ 5. The Silo store manager, Shawn Pott ("Pott"), used computer records to provide Oak Park detectives with details of the transaction involving the cashing of the stolen check. Pl.'s Resp. to Def.'s 12(m) ¶ 9. Pott said that she authorized the check for payment but did not recall the specific transaction or the purchaser. *Id.* Pott informed the Oak Park police that when cashing a check, she always verified the person's photo identification. *Id.*

## C. THE ARREST

On May 16, 1995, an Oak Park detective contacted the Chicago Police Department and obtained information that seven parking tickets had been issued between March 23 and May 11, 1995, to a late-model, blue Buick with license plate number KSB892. 12(m) ¶¶ 10, 20. The tickets were issued to the vehicle in the 1600 and 1700 blocks of North Kimball. 12(m) Ex. B. Oak Park detectives searched the area but could not locate the car. 12(m) ¶ 10.

On the morning of May 19, 1997, Oak Park police detectives Paladines and Peter Karkowski went to the vicinity of 1710 North Kimball to again look for the Buick. 12(m) ¶ 17. They located the car and surveilled it. Between 7:30 and 7:45 a.m., the detectives observed an African–American woman (later determined to be Taylor) enter the car and drive away. *Id.*

The detectives pulled the car over two blocks away and questioned Taylor to determine if she was Young, the registered owner of the car. 12(m) ¶ 19. Taylor told Paladines that she was not Young and that she had just borrowed the car that day to go to a job interview and that she did not know where Young was or how to reach her. Pl.'s Resp. to Def.'s 12(m) ¶¶ 19 and 23. Taylor did not have any information about how Young could be contacted. *Id.* ¶ 8. Pala-

dines informed Taylor that the car had been used in a robbery and that she would be required to go with them to the Oak Park police station. Pl.'s Resp. to Def.'s 12(m) ¶¶ 21–22. Taylor objected and again told the police that she was on her way to a job interview. 12(m) ¶ 19. Taylor was arrested and handcuffed, placed in the officers' police car and driven to the police station. First Amended Complaint ¶ 10. Taylor was held for approximately five hours before she was released. *Id.* ¶ 17.

## IV. QUALIFIED IMMUNITY STANDARD

██ Qualified immunity shields police officers from suit for damages if their actions are reasonable "in light of clearly established law and the information the [arresting] officers possessed." *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) (*quoting Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987)). Neither party disputes that the constitutional right not to be arrested without probable cause was well established at the time of Taylor's arrest.[2] Taylor must therefore demonstrate the second prong of qualified immunity: that no reasonable officer knowing the specific facts available to Paladines at the time of her arrest would have concluded that probable cause did exist.

██ Ample room for mistaken police judgment is provided under qualified immunity by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter,* 502 U.S. at 228, 112 S.Ct. at 537. A policy to provide broad discretion and to permit reasonable error has been adopted in order that police officers are not unduly constrained by fear of being sued. *Davis v. Scherer,* 468 U.S. 183, 196, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984). Police officers are entitled to qualified immunity

---

**2.** "Probable cause [to arrest] exists where the facts and circumstances within ... the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been ... committed." *Brinegar v. United States,* 338 U.S. 160,

175–76, 69 S.Ct. 1302, 1311, 1310–11 (1949) (inner quotations and parenthesis omitted). Additionally, "probable cause ... means less than evidence which would justify condemnation ... it imports [an arrest] made under circumstances which warrant suspicion." *Edwards v. Cabrera,* 58 F.3d 290, 294 (7th Cir.1995).

when their decisions are reasonable, even if they are mistaken. *Hunter,* 502 U.S. at 229, 112 S.Ct. at 537. Whether Paladines is entitled to qualified immunity is a question of law for the trial court. *Maltby v. Winston,* 36 F.3d 548, 554 (7th Cir.1994).

We therefore turn to the issue before us. Was Detective Paladines presented with a situation in which no reasonable officer could have believed that he had probable cause to arrest Taylor? The Court holds that Detective Paladines is entitled to summary judgment on the defense of qualified immunity because a reasonable police officer could have concluded that probable cause existed to arrest Taylor.

As of the date of Taylor's arrest, Paladines was aware of a number of facts. Paladines knew that a robbery had been committed. He knew the make, model, and license number of the getaway car. He knew that the owner of the car was a female who could not be located. Paladines knew that the getaway car probably was used to transport the African–American female who negotiated the stolen check to purchase electronics in Evanston on the same day as the robbery. He knew the getaway car had received a number of parking tickets in the vicinity of the 1700 block of Kimball both before and after the robbery. He knew that both the car and its driver on May 19, Taylor, were connected to the 1700 block of Kimball.

On the morning of May 19, 1995, Paladines stopped Taylor in the Buick as she drove away. Taylor's explanation that she had borrowed the car but did not know where or how to reach the owner merely created further suspicion. How could she have borrowed a car that morning and yet, not know where the owner lived or how to contact her?

Paladines faced a discretionary decision of whether to arrest Taylor or let her drive away in the Buick. Was it reasonable to conclude that Taylor, who was driving the car used to flee a robbery and to possibly pass a stolen check, and who now appeared evasive to Paladines' questions, might be the person who passed the stolen check at Silo? Absolutely. Even if Paladines was mistaken in the belief that he had probable cause to arrest Taylor, was his mistake reasonable, or was it a willful violation of the law or the act of an incompetent? Because this Court finds that Paladines acted reasonably, he is entitled to summary judgment based upon the affirmative defense of qualified immunity. Because there is a reasonable basis to conclude that probable cause existed, this case should not be permitted to go to trial. *Eversole v. Steele,* 59 F.3d 710, 717 (7th Cir.1995).

### CONCLUSION

For all of the foregoing reasons, Paladines' motion for summary judgment on the defense of qualified immunity is **GRANTED**. Plaintiff's First Amended Complaint is dismissed with prejudice and costs of suit are awarded to defendants.