**UNITED STATES of America,**
**Plaintiff,**

v.

**Styles TAYLOR, et al., Defendants.**

**No. 2:01–CR–73–AS.**

United States District Court,
N.D. Indiana,
Hammond Division.

Jan. 5, 2004.

Philip Craig Benson, U.S. Attorney's Office, Hammond, IN, for Plaintiff.

David E. Vandercoy, Valparaiso University Law Clinic, Valparaiso, IN, Ihor Alexander Woloshansky, Law Office of I. Alexander Woloshansky, Merrillville, IN, John E. Martin, Federal Community Defenders Inc., Hammond, IN, for Defendants.

## ORDER

ALLEN SHARP, District Judge.

This matter is before the Court on Defendant Styles Taylor's Motion to Suppress Statements [DE 296]. In addition to Defendant's Motion, the Court has reviewed and considered the Government's Response to Styles Taylor's Motion to Suppress Statements [DE 368]; Defendant Taylor's Reply to Government's Response to Motion to Suppress Statement [DE 373]; Defendant Taylor's Supplemental Memorandum in Support of Motion to Suppress [DE 484]; and Government's Supplemental Memorandum Regarding Defendant Taylor's Motion to Suppress Statements and Subsequent Evidentiary Hearing [DE 491]. Additionally, the Court heard testimony and considered evidence presented at an evidentiary hearing held on October 8, 2003 regarding Defendant Taylor's Motion. For the following reasons, Defendant Taylor's Motion to Suppress Statements is **DENIED.**

## BACKGROUND

Defendant Taylor alleges that there was no probable cause for his warrantless arrest on April 12, 2000 and therefore claims that his Fourth, Fifth and Sixth Amendment rights were violated. It is based on these contentions, that Taylor seeks to have certain post-arrest statements suppressed.

During the evidentiary hearing on Taylor's Motion, the Court heard evidence that Taylor was arrested at approximately 12:30 p.m. and was taken to the Hammond Police Department shortly thereafter. Detectives Brian Miller and Michael Solan each testified that the police had received information from two separate confidential sources—CI 1 and CI 2—that linked Taylor to the robbery of Firearms Unlimited and murder of Frank Freund and moreover, that Taylor was preparing to leave town. Based on this information, Taylor was arrested and taken to the Hammond Police Department for interrogation. According to testimony elicited at the hearing, Taylor was not questioned at the time of his arrest. On April 12, 2000, following Taylor's arrest but prior to any interrogation, Detective Solan and Special Agent Eric Ellis (ATF) traveled to Taylor's mother's home at 939 Fields Street in Hammond to conduct a search of the premises. After obtaining written consent from Glenda Taylor, Styles Taylor's mother, the law enforcement officials searched the home. During this search, authorities discovered a firearm and ammunition in a chest of drawers in a room that Glenda Taylor indicated was used by her son, Styles.

After returning to the Hammond Police Department, at approximately 4:00 p.m., Detective Miller and S.A. Ellis met with Taylor. At that time, according to the testimony offered by Special Agent Ellis during the hearing, Taylor indicated that he would make a statement but first wanted to see his mother and aunt. After Taylor's mother and aunt arrived, Taylor spoke with his mother alone for a few moments. Once Taylor and his mother's discussion concluded, S.A. Ellis informed Taylor of his *Miranda*[1] rights. After as-

---

1. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the U.S. Supreme Court held that prior to a custodial interrogation a criminal suspect must "be warned that he has a right to remain silent, that any statement he does make may be used

certaining that Taylor did not have any questions, S.A. Ellis asked Taylor to sign a waiver. Taylor did so. Following his waiver, Taylor made voluntary and signed statements regarding his knowledge of the Firearm's Unlimited robbery and murder to Detective Miller and S.A. Ellis while both his mother and aunt were present. It is these statements that Taylor now seeks to have suppressed.

The Government presents a two-pronged objection to Taylor's Motion. First, the Government claims that Taylor is barred by issue preclusion as a result of an adverse ruling in a previous case involving Taylor and the April 12, 2000 search of Glenda Taylor's home. Second, the Government contends that even if Taylor is not precluded from seeking suppression of his statements his motion should be denied since there was probable cause for his arrest, that he was informed of his *Miranda* rights, and that Taylor's statements to police were made knowingly and voluntarily.

■ Before addressing the merits of Taylor's claim, the Court will first address the Government's argument that Defendant Taylor is barred by issue preclusion in seeking to have these statements suppressed. As a matter of further background, the firearm that was recovered at the home of Glenda Taylor during the April 12, 2000 search was not related to either the Firearms Unlimited robbery or murder. However, since Taylor was a convicted felon, he was charged under a separate indictment from the one at bar, with one count of felon in possession of a firearm. Taylor eventually entered a plea of guilty in that case. However, prior to his change of plea, Taylor filed a motion to suppress to have the firearm evidence recovered from the April 12, 2000 search of his home, suppressed. The issue present-

ed and considered at the evidentiary hearing was whether the consent given by Taylor's mother to search the home was voluntary. Following the evidentiary hearing, Taylor's Motion to Suppress in that case (2:01CR59) was denied.

As discussed earlier, Taylor is now seeking to have the statements he made following his warrantless arrest and the search of his mother's home suppressed. However, he is no longer claiming that the evidence he seeks to have suppressed is the fruit of a poisonous tree of an illegal and involuntary search, but instead, claims that his statements were the result of an illegal arrest and subsequent interrogation. The Court rejects the Government's contention that Taylor is barred by the adverse ruling in the earlier case. Rather, the Court finds that the Government has not offered any persuasive authority to support its position and points out that many circuits have refused to allow collateral estoppel to be used against a defendant in a criminal trial. While neither the U.S. Supreme Court nor the Seventh Circuit have weighed in on the issue, other circuits have held that the use of collateral estoppel against a criminal defendant, particularly one that entered an unconditional plea of guilty in the previous case, is not appropriate. *See United States v. Gallardo-Mendez,* 150 F.3d 1240, 1242–44; (10th Cir. 1998)("the liberty interest of a criminal defendant takes priority over the usual concerns for efficient judicial administration so often found in civil proceedings" *citing United States v. Pelullo,* 14 F.3d 881 (3rd Cir.1994)).

The Court rejects the Government's argument that Taylor is barred from bringing the present motion and accordingly, turns to the merits of his claim.

as evidence against him, and that he has a right to the presence of an attorney, either

retained or appointed." *Id.* at 444, 86 S.Ct. at 1612.

## ANALYSIS

 A warrantless arrest must be supported by probable cause. *United States v. Navarro*, 90 F.3d 1245, 1251 (7th Cir.1996); *Michigan v. Summers*, 452 U.S. 692, 700, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). An officer may legally arrest a suspect without a warrant if he has probable cause to believe that the suspect committed a crime and the suspect is not in his home. *United States v. Sawyer*, 224 F.3d 675, 678 (7th Cir.2000). A Court must examine the totality of circumstances to assess whether the police could have reasonably believed that a particular individual has committed a crime. *Navarro*, 90 F.3d at 1254; *see also Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir.1995). The key is whether, at the moment of arrest, the officers possessed knowledge of facts and circumstances reasonably trustworthy enough to warrant a reasonable man to believe a suspect had committed or was committing a crime. *Beck*, 379 U.S. at 91, 85 S.Ct. at 225–26. Information obtained subsequent to the arrest, no matter how compelling, does not inform the inquiry as to whether probable cause was present. *Maltby v. Winston*, 36 F.3d 548, 557 (7th Cir.1994), *cert. denied*, 515 U.S. 1141, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995). In sum, probable cause requires more than mere suspicion but less than virtual certainty. *United States v. Covarrubias*, 65 F.3d 1362, 1368 (7th Cir.1995).

 An informant's tip may justify probable cause, but it must be sufficiently trustworthy, such as where it is detailed and corroborated and by outward appearances, accurate. *Navarro*, 90 F.3d at 1254. Reliability may be tested by a track record of reliability, by independent corroboration, by personal observation by the police, or by other methods. *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir.1995). In order to determine whether probable cause exists, both with respect to the informant's veracity and reliability and as a basis for the information and with respect to the degree it has been corroborated, the Court must consider the totality of circumstances. *Edwards v. Cabrera*, 58 F.3d 290, 293 (7th Cir.1995), *citing Gates*, 462 U.S. at 238–45, 103 S.Ct. 2317. The tip itself may be considered in making that assessment—innocent activity (i.e., preparing to leave town) can become suspicious in light of an informant's tip. *Edwards*, 58 F.3d at 293–94. Moreover, courts generally view citizen-informants as more reliable than police informants. *Id.* at 294 (observing that citizen-informant who made report to police while working as a bus driver was gainfully employed and could be identified if necessary and whose employer would likely frown upon relaying information while on the job).

In *Edwards*, the Seventh Circuit expounded on the Supreme Court's holding in *Gates*, and explained that "the import of *Gates* is that the question of whether officers had probable cause to arrest is to be considered in light of all information available to them at the time of the arrest, including the tip itself together with the knowledge of the informant, any corroboration of the tip, and any other information uncovered by or related to the arresting officer." *Edwards*, 58 F.3d at 293. Further, that "*Gates* and its progeny demand that we consider all the facts available to the police at the time of the arrest, even those that may, in and of themselves, be deficient in some way." *Id.*

 Turning to the set of facts available to the officers in this case, the law enforcement officers received two separate and independent tips regarding Styles Taylor and his alleged involvement in the

Firearms Unlimited robbery and murder. Specifically, the Court was presented with evidence that the police received information from an informant (CI 1) who was associated with Taylor and had never acted as an informant previously. The second informant (CI 2) was a confidential informant who has supplied information to authorities, specifically to Detective Solan, on numerous occasions. In fact, at the time at issue, CI 2 had given information to authorities on at least thirty prior occasions, with his information found to be truthful and credible on twenty-five occasions.

With regards to CI 1's statement[2], the Court heard testimony at the evidentiary hearing, that CI 1 was an acquaintance of Taylor and went to authorities to report a conversation CI 1 had with Taylor in which he told CI 1 that he had murdered Frank Freund during the robbery of Firearms Unlimited. CI 1 has not previously supplied information to the police and therefore the police were unable to judge the trustworthiness of CI 1's statements by verifying the accuracy of any previous statements by CI 1. However, Detectives Miller and Solan both testified that they were able to verify other information, outside of Taylor's admission, that was contained in CI 1's statement. Furthermore, evidence was presented that CI 1 was a minor at the time of the statement who was encouraged by a parent to report what CI 1 had been told by Taylor about the murder and robbery to the authorities. The fact that information within CI 1's statement could be verified, CI's age, and the fact that CI 1 was not an informant attempting to curry favor with police, all lead this Court to find the information received from CI 1 to be reliable and trustworthy. After reviewing CI 1's state-

ment *in camera*, the Court finds that it contains a clear and categorical admission by Taylor and, taken together with other evidence, established probable cause for Taylor's arrest on April 12, 2000.

Turning to CI 2, according to testimony elicited at hearing, CI 2 supplied Detective Solan with information regarding the Firearms Unlimited robbery and murder including information that Taylor was preparing to leave town to get away from the heat surrounding the investigation of the crime. The Court finds that based on CI 2's track record of reliability, that the information relied on by the police was sufficiently trustworthy.

In examining the totality of circumstances, the Court finds that taken together, CI 1 and CI 2's tips established probable cause and justified the arrest of Styles Taylor. Therefore, the Court rejects Taylor's contention that his arrest was in violation of his rights under the Fourth, Fifth and Sixth Amendments and denies Taylor's request for the suppression of his post-arrest statements.

## CONCLUSION

For the reasons stated above, Defendant Styles Taylor's Motion to Suppress Statements is **DENIED.**

**SO ORDERED.**

---

**2.** After the evidentiary hearing the Court ordered the Government to file, *in camera* and under seal, the statement of CI 1 due to the nature of the statement and the fact that CI 1's identity has been kept secret due to death threats against CI 1.