OPINION
{¶ 1} Defendant-appellant James Mangus, Jr. appeals from his conviction and sentence in the Delaware County Municipal Court on one count of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a). Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On May 20, 2006 appellant was arrested and charged with operating a motor vehicle while under the influence in violation of R.C.4511.19(A)(1)(a) and (h) and one count of possession of an open container in violation of Delaware City Code Section 529.07.
 {¶ 3} The transcript of the proceedings in the court below is in the videotape medium. Pursuant to App.R. 9 the parties have provided the following "Agreed Statement of Relevant Facts."
 {¶ 4} "1. Two witnesses testified at the hearing, Cheryl Phelps and Officer Patrick Gerke, both for the prosecution.
 {¶ 5} "2. Cheryl Phelps testified that on May 20, 2006 she was driving on Liberty Street in Delaware County, Ohio when she observed a man in a truck going all over the road. Four or five times his two wheels went over the right side of the road. When he *Page 3 
stopped at a four way stop she saw his face in the rearview mirror and saw that his face was red, saw his eyes and thought him drunk.
 {¶ 6} "3. She called the police and stayed on the phone until an officer from Delaware police arrived. She gave her name and address to the dispatcher. After the police arrived she said she saw appellant turn left in front of a vehicle creating a danger.
 {¶ 7} "4. Officer Patrick Gerke was dispatched to a possible impaired driver. Dispatch simultaneously maintained contact with both Ms. Phelps and Officer Gerke by phone and police radio relaying information from Ms. Phelps to Officer Gerke regarding vehicle information and incidents of defendant's driving. He arrived on Liberty Road and fell in behind the vehicle driven by appellant. The car following flashed her lights to identify herself as the caller.
 {¶ 8} "5. Officer Gerke was aware that the citizen caller was still on the phone with dispatch and was aware that dispatch had the callers identifying information.
 {¶ 9} "6. The officer followed the appellant and observed no illegal driving. He does not remember a close call when appellant turned left as witnessed by Ms. Phelps. He stopped appellant when he turned on his beacons in the City of Delaware. He did not know the name of informant Phelps until after he stopped appellant.
 {¶ 10} "7. Both witnesses identified the defendant as the driver of the vehicle".
 {¶ 11} The trial court denied appellant's motion to suppress at the conclusion of the hearing.
 {¶ 12} On September 26, 2006, appellant appeared before the trial court and entered a plea of no contest to the charge. The trial court accepted the plea and entered *Page 4 
a finding of guilty. Appellant was sentenced to a period of six days in jail, a $350.00 fine and a one year driver license suspension.
 {¶ 13} It is from this conviction and sentence that appellant appeals, raising the following assignment of error:
 {¶ 14} "I. THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE."
 I. {¶ 15} In his sole assignment of error, appellant argues that the trial court erred in overruling his motion to suppress. We disagree.
 {¶ 16} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App. 3d 93,96; State v. Claytor (1993), 85 Ohio App. 3d 623, 627; State v.Guysinger (1993), 86 Ohio App. 3d 592.
 {¶ 17} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case. *Page 5 
 {¶ 18} An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that "the person stopped is, or is about to be, engaged in criminal activity." United States v. Cortez (1981), 449 U.S. 411, 417,101 S.Ct. 690, 66 L.Ed.2d 621. Reasonable suspicion can arise from information that is less reliable than that required to show probable cause.Alabama v. White (1990), 496 U.S. 325, 330, 110 S.Ct. 2412,110 L.Ed.2d 301. But it requires something more than an "inchoate and un-particularized suspicion or `hunch.'" Terry v. Ohio (1968),392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889. "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." Illinois v. Wardlow (2000), 528 U.S. 119, 123, 120 S.Ct. 673,145 L.Ed.2d 570.
 {¶ 19} A police officer need not always have knowledge of the specific facts justifying a stop and may rely upon a dispatch. Maumee v.Weisner (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507. This principle is rooted in the notion that effective law enforcement cannot be conducted unless officers can act on information transmitted by one officer to another, and that officers, who must often act quickly, cannot be expected to cross-examine their fellow officers about the foundation of the transmitted information. Id. The admissibility of evidence uncovered during a stop does not rest upon whether the officers relying upon a dispatch were themselves aware of the specific facts that led the colleagues to seek their assistance, but turns instead upon whether the officer who issued the dispatch possessed a reasonable suspicion to make a stop. Id., citing United States v. Hensley (1985),469 U.S. 221, 231, 105 S.Ct. 675, 83 L.Ed.2d 604. Thus, if the dispatch has been issued in the absence of a reasonable suspicion, then a stop in objective reliance upon it violates the Fourth Amendment. Id. *Page 6 
The state must therefore demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity. Id. 87 Ohio St.3d at 298, 720 N.E.2d 507. See, alsoVillage of Newcomerstown v. Ungrean, 146 Ohio App.3d 409,2001-Ohio-1754, 766 N.E.2d 233.
 {¶ 20} Where the information possessed by the police before the stop was solely from an informant's tip, the determination of reasonable suspicion will be limited to an examination of the weight to be given the tip and the reliability of the tip. Id. at 299, 720 N.E.2d 507. Courts have generally identified three classes of informants: the anonymous informant, the known informant from the criminal world who has provided previous reliable tips, and the identified citizen informant.Id. at 300, 720 N.E.2d 507. An identified citizen informant may be highly reliable, and therefore a strong showing as to other indicia of reliability may be unnecessary. Id. Thus, courts have routinely credited the identified citizen informant with greater reliability. Id.
 {¶ 21} In Weisner, the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:
 {¶ 22} "The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: `[l]f an unquestionably honest citizen comes forward with a report of criminal activity — which if fabricated would subject him to criminal liability — we have found rigorous scrutiny of the basis of his knowledge unnecessary.' Illinois v. Gates, 462 U.S. at 233-234,103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545. *Page 7 
 {¶ 23} "In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. InUnited States v. Pasquarille (C.A.6, 1994), 20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to" `idle rumor or irresponsible conjecture," ` quoting United States v.Phillips (C.A.5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant." `Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness." `Easton v. Boulder (C.A.10, 1985), 776 F.2d 1441, 1449, quoting LaFave, Search and Seizure (1978) 586-587. See, also, Edwards v. Cabrera (C.A.7, 1995), 58 F.3d 290, 294.
 {¶ 24} "Many Ohio appellate courts have also accorded the identified citizen witness higher credibility . . . In State v. Loop (Mar. 14, 1994), Scioto App. No. 93CA2153, 1994 WL 88041 . . . the court held that a telephone call from a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving. The court reasoned that "`[information from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable." `Id. at 5, quoting State v. Carstensen (Dec. 18, 1991), Miami App. No. 91-CA-13, *301 at *4, 1991 WL 270665. . . . See, also,Fairborn v. Adamson (Nov. 17, 1987), Greene App. No. 87-CA-13, at 4-5,1987 WL 20264; State v. Jackson (Mar. 4, 1999), Montgomery App. No. 17226, at *5, 1999 WL 115010, observing generally that "`a tip from an identified citizen *Page 8 
informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge," ` quoting Centerville v. Gress (June 19, 1998), Montgomery App. No. 16899, at *4-5, 1998 WL 321014." Weisner, supra. at 300-301, 720 N.E.2d 507.
 {¶ 25} Turning to the case sub judice, we find that the tip satisfies the relevant factors cited in Weisner. First, Ms. Phelps provided her name and relevant phone number and agreed to meet with the officer in person. She was in fact present when the officer initiated the traffic stop, and she flashed her headlights to the officer to identify herself as the informant. Second, the information provided by Ms. Phelps, the tipster, had indicia of reliability. See Weisner, 87 Ohio St.3d at 302,720 N.E.2d 507. Ms. Phelps provided an eyewitness account of the crime and provided specific details, including a description of the erratic driving. She remained on the line with the dispatcher throughout the incident. She identified herself to the arresting officer at the scene. Ms. Phelps subsequently provided the officers a written account of what she had witnessed. Further, Ms. Phelps had directed them to the site of the alleged crime. Thus, there is no question that Ms. Phelps was an identified citizen informant and she had first hand knowledge of the events.
 {¶ 26} Based on the foregoing, we find that the tips from Ms. Phelps had sufficient indicia of reliability. When the totality of the circumstances is considered, we find that there was sufficient reasonable suspicion to justify the investigative stop.
 {¶ 27} Appellant's sole assignment of error is overruled.
 {¶ 28} The judgment of the Delaware Municipal Court is affirmed.
Gwin, P.J., *Page 9 
Hoffman, J., and Farmer, J., concur. *Page 10 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware Municipal Court is affirmed. Costs to appellant. *Page 1