[Cite as *State v. Schnell*, 2016-Ohio-752.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-06-125 |
| | : | O P I N I O N |
| - vs - | | 2/29/2016 |
| | : | |
| STEVEN G. SCHNELL, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY AREA I COURT
Case No. CRB 1500123

Michael T. Gmoser, Butler County Prosecuting Attorney, Lina N. Alkamhawi, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for plaintiff-appellee

Neal D. Schuett, 121 West High Street, Oxford, Ohio 45056, for defendant-appellant


**PIPER, P.J.**

{¶ 1} Defendant-appellant, Steven Schnell, appeals his conviction in the Butler County Area I Court for operating a vehicle while intoxicated.

{¶ 2} Police dispatch received a call at 2:48 a.m. from a Speedway gas station clerk reporting that intoxicated individuals were standing outside of a vehicle, pumping gas. The clerk provided dispatch with a description of the car as a white Honda, and also provided the license plate number.

{¶ 3} Sergeant David King of the Oxford Police Department responded to the dispatch call. Within a minute or two after receiving notice from dispatch, Sergeant King pulled into the gas station, and observed the white Honda sitting idle at the exit of the gas station. After pulling behind the Honda, Sergeant King noticed that the driver of the vehicle did not pull out of the gas station, even though the car was running and there was no traffic impeding the car's departure. Sergeant King observed the car idling at the gas station's exit for 30-45 seconds. Sergeant King then activated his lights and began to exit his police cruiser. At that time, the driver of the Honda, later identified as Schnell, drove away. Sergeant King pursued the Honda and observed the car weave in its lane, touch the double yellow line, and almost strike a curb while turning. The Honda eventually turned into a retail parking lot and stopped.

{¶ 4} Upon approaching the vehicle, Sergeant King observed various signs indicating that Schnell was intoxicated; including that Schnell's speech was slurred and his eyes were bloodshot and glassy. Sergeant King also detected the odor of an alcoholic beverage coming from the car, and upon closer contact, coming from Schnell's person. He administered field sobriety tests, all of which indicated that Schnell was intoxicated. Schnell later took a breath test, which indicated that his blood alcohol level was .206.

{¶ 5} Schnell was arrested and charged by complaint with OVI, failure to control, and underage possession of alcohol. Schnell filed a motion to suppress, arguing that Sergeant King's stop was unlawful. The trial court denied the motion, and Schnell pled no contest to one count of OVI. As a result of his plea, the state dismissed the other two charges. The trial court found Schnell guilty of OVI, and sentenced him accordingly. Schnell now appeals his conviction, raising the following assignment of error.

{¶ 6} THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED MR. SCHNELL'S MOTION TO SUPPRESS AND FOUND THAT SCHNELL

WAS LAWFULLY STOPPED AND DETAINED.

{¶ 7} In his sole assignment of error, Schnell argues that the trial court erred in not granting his motion to suppress.

{¶ 8} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Cochran*, 12th Dist. Preble No. CA2006-10-023, 2007-Ohio-3353. Acting as the trier of fact, the trial court is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis*, 12th Dist. Butler No. CA2005-03-074, 2005-Ohio-6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 9} The Fourth Amendment protects people from illegal searches and seizures. *United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675 (1985). Before an intrusion is justified, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). "The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity." *City of Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999).

{¶ 10} Instead of employing an inflexible standard to determine whether an officer has a reasonable suspicion of criminal activity, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690 (1981). Accordingly, "both the content of information possessed by police and its degree of reliability" are pertinent when determining whether there is a reasonable suspicion of criminal

activity to justify a stop. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412 (1990).

{¶ 11} According to the Ohio Supreme Court,

> Where an officer making an investigative stop relies solely upon a dispatch, the state must demonstrate at a suppression hearing that the facts precipitating the dispatch justified a reasonable suspicion of criminal activity.

> A telephone tip can, by itself, create reasonable suspicion justifying an investigatory stop where the tip has sufficient indicia of reliability.

*Weisner,* at paragraphs one and two of the syllabus.

{¶ 12} In determining whether a tip has sufficient indicia of reliability, courts will consider the informant's veracity, reliability, and basis of knowledge. *Id.* at 300. When establishing the bases for these factors, courts will first determine what type of informant provided the tip. *Id.* "Although the distinctions between these categories are somewhat blurred, courts have generally identified three classes of informants: the anonymous informant, the known informant (someone from the criminal world who has provided previous reliable tips), and the identified citizen informant." *Id.* While the emphasis is still on the totality of the circumstances surrounding the stop, courts have observed that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. *Id.* Conversely, an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary given the classification of informant. *Id.*

{¶ 13} Based upon the classification and varying degrees of veracity associated with each, we begin our analysis by first categorizing the clerk. Schnell suggests that the clerk is an anonymous informant because she did not provide a full name to dispatch. However, further analysis is necessary because, and as recognized by established law, the lines between classifications are influenced by other factors.

{¶ 14} Courts have been lenient in their assessment of the type and amount of information needed to identify a particular informant. Many courts have found, for instance, that identification of the informant's place of work supports a classification of citizen informant. One federal court concluded that, although the informant's name was unknown, information that he was a transporter of prisoners was enough to remove him from the anonymous informant category. *United States v. Pasquarille*, 20 F.3d 682, 689 (6th Cir.1994). Likewise, in *Edwards v. Cabrera*, 58 F.3d 290, 294 (7th Cir.1995), the court was satisfied with the knowledge that the informant was a bus driver whose identity was ascertainable.[1] The Tenth District Court of Appeals also considered whether an unnamed informant was an identified citizen, and determined that she was, in part because the police knew that the woman was an employee at a specific UDF gas station, and was therefore "readily identifiable by location, occupation, employer, and phone number, though the officers did not know the clerk's name prior to the stop." *State v. Taylor*, 10th Dist. Franklin No. 05AP-1016, 2006-Ohio-5866, ¶ 8.

{¶ 15} Similar to these cases in which an otherwise nameless informant becomes an identified citizen by virtue of their place of employment, the clerk's identity here was ascertainable and was not clandestine or surreptitious in any manner. The clerk identified herself as an employee of a specific Speedway gas station, with the address and phone number known to police dispatch. Had officers wanted to speak directly with the clerk, they could have easily talked with her given that the clerk gave dispatch her exact location. In fact, at one point, Sergeant King asked dispatch a question, and dispatch offered to call the clerk back to find out the answer. This ability to readily reach the clerk demonstrates that she

---

1. Both of these cases were cited favorably by the Ohio Supreme Court in City of *Maumee v. Weisner*, 87 Ohio St.3d 295 (1999).

was an identified citizen who was not trying to avoid contact with police or dispatch in any way.

{¶ 16} In *Weisner*, the Ohio Supreme Court determined that the informant was a known citizen and that his tip was reliable based in part on the informant's willingness to interact with police. The court noted that the informant "may have considered face-to-face police contact a possibility. With that in mind, he would have been unlikely to offer a false report because of the potential consequences." *Weisner*, 87 Ohio St.3d at 302. Given the willingness of the informant to engage in police contact, the court concluded "that greater credibility may be due an informant such as this who initiates and permits extended police contact rather than one who phones in a tip and retreats from any further police interaction." *Id.*

{¶ 17} Like *Weisner*, the gas station clerk may have considered face-to-face police contact a possibility, and did nothing to retreat from further police interaction. Instead, the clerk freely gave her exact location, her occupation and reason for being at the gas station, and voluntarily contacted dispatch to report her observations. There is no indication in the record, whatsoever, that the clerk tried to hide her identity, location, or basis of knowledge from the police, or that she fled the gas station after making the call in order to avoid further police contact.

{¶ 18} After reviewing the record and considering the totality of the circumstances, we find that the clerk's identity was ascertainable, and that the information she provided to dispatch was enough to establish her classification as a known citizen informant.

{¶ 19} Though a tip from a citizen informant weighs in favor of reliability and veracity, the clerk's characterization as a citizen informant is not dispositive of the case, and instead, goes to only a portion of the totality of the circumstances. We continue our review, and determine that the clerk's basis of knowledge, veracity, and reliability supports the credibility

of her tip.

**{¶ 20}** The record indicates that the clerk made her phone call at the same time that she observed the behavior indicative of intoxication, and specifically noted the basis of her concern to dispatch; that someone was about to drive despite showing signs of intoxication. Sergeant King was able to respond almost instantly, and confirmed that the clerk's tip was accurate in that a white Honda was still located at the gas station, exhibiting questionable behavior. Moreover, the indicia of reliability of the clerk's tip was further corroborated by Sergeant King's direct observations.

**{¶ 21}** The record is clear that once Sergeant King approached the gas station, he observed the white Honda sitting idle for 30-45 seconds at the entrance/exit of the gas station. The car did not exit the gas station, despite there being no traffic impeding the car's exit onto the roadway. This questionable behavior contributed to Sergeant King's reasonable suspicion that the incident needed further investigation. Once Sergeant King activated his overhead lights in an attempt to talk with the driver, the driver escalated Sergeant King's suspicions by driving away, prompting Sergeant King to follow the car to effectuate a stop.

**{¶ 22}** Despite Schnell's suggestion that the stop occurred the moment Sergeant King pulled behind the white Honda in the gas station parking lot and activated his lights, the record clearly demonstrates that Sergeant King did not effectuate the stop until Schnell pulled into a nearby retail parking lot and actually stopped, thus permitting Sergeant King to approach the driver.[2] *See State v. Hacker*, 12th Dist. Butler No. CA2000-11-235, 2002-Ohio-2312, ¶ 12 ("a police officer does not necessarily seize the occupants of a parked vehicle through the activation of a police cruiser's overhead lights").

---

2. Even if the stop occurred when Sergeant King pulled behind the white Honda as Schnell argues, we would still find that the stop was valid given the known citizen informant's tip and the articulable suspicion that arose when Sergeant King observed the car sitting unexplainably at the exit for 30-45 seconds.

{¶ 23} After Sergeant King approached the gas station parking lot, he observed several significant circumstances that further corroborated the clerk's tip regarding intoxicated behavior. Sergeant King observed the white Honda inexplicably idling at the exit of the gas station for a prolonged period, observed the white Honda pull away once Sergeant King had initiated his overhead lights, and observed the car weave in its lane of travel before almost striking the curb during a turn. As such, these additional observations added to the totality of circumstances upon which Sergeant King based his articulable suspicion that some criminal activity was occurring. We find Sergeant King's basis for suspicion reasonable, and conclude that the stop did not violate Schnell's rights in any way.

{¶ 24} Having found that Sergeant King's stop was valid, the trial court did not err in overruling Schnell's motion to suppress. Schnell's single assignment of error is overruled.

{¶ 25} Judgment affirmed.

RINGLAND and HENDRICKSON, JJ., concur.