[Cite as *State v. Atkins*, 2013-Ohio-2446.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. John W. Wise, P.J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 12-CA-90 |
| HOLLY A. ATKINS | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Licking County Municipal
                             Court, Case No. 12TRC07743

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      June 7, 2013

APPEARANCES:

For Appellant:                        For Appellee:

William T. Cramer                     Amy S. Weeks
470 Olde Worthington Road, Suite 200  40 West Main Street
Westerville, Ohio 43082               Newark, Ohio 43055

*Baldwin, J.*

{¶1} Defendant-appellant Holly Atkins appeals from the denial by the Licking County Municipal Court of her Motion to Suppress. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On July 3, 2012, appellant was cited for operating a motor vehicle while under the influence of alcohol and with a prohibited blood alcohol concentration in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d) and a marked lanes violation in violation of R.C. 4511.33. At her arraignment on July 10, 2012, appellant entered a plea of not guilty to the charges.

{¶3} A hearing on appellant's Motion to Suppress was held on September 14, 2012. At the hearing, defense counsel indicated to the trial court that appellant was challenging the stop of her vehicle.

{¶4} At the hearing, Trooper Daniel Moran, Jr. of the Ohio State Highway Patrol testified that, on July 3, 2012, he was working from 6:00 p.m. to 6:00 a.m. The Trooper was in uniform in a marked cruiser when he was notified that a dispatcher had received a cell phone call. The call was from a caller who was following appellant's vehicle eastbound on Interstate 70. The caller informed the dispatcher that the vehicle was all over the road and also indentified the driver as a young woman with dark hair. The caller further stated that the vehicle almost went into the median. According to the caller, the woman was driving a black vehicle with the windows down. Trooper Moran did not know the sex of the caller.

{¶5}   After receiving information from the dispatcher, Trooper Moran tried to catch up with the vehicle.  He testified that he caught up with the vehicle east of State Route 158 and that the caller confirmed through the dispatcher that the Trooper had the correct vehicle.  The Trooper then stopped appellant's vehicle.

{¶6}   When asked during the hearing if he had noticed any traffic violations before stopping appellant's vehicle, Trooper Moran testified that, "as it traveled up the exit ramp in the middle lane it moved over a solid white line and moved to the left lane which both lanes were turning or turn lanes to the north on State Route 37." Transcript at 7-8.

{¶7}    After July 3, 2012, the Trooper learned that the caller's name was Ann and that there was an individual named Duane in the car with Ann at the time. Trooper Moran testified that he spoke with Duane who confirmed the information that the dispatcher had relayed to him on July 3, 2012.

{¶8}   On cross-examination, Trooper Moran testified that he did not observe any erratic driving while following appellant's vehicle and that the lane change was the only violation that he claimed to have observed. He testified that the windows were down in the vehicle and that the driver was a young woman with dark hair. Trooper Moran further testified that he stopped appellant for a marked lanes violation because, after signaling, she had crossed over a solid line into another lane.

{¶9}   Pursuant to a Judgment Entry filed on September 18, 2012, the trial court overruled appellant's Motion to Suppress. The trial court, in its Judgment Entry, found that Trooper Moran had a reasonable suspicion of criminal activity based on the information the he had received from the dispatcher and that he was justified in

stopping appellant. The trial court, in its Judgment Entry, noted that appellee had conceded that Trooper Moran did not witness appellant commit any traffic violations.

{¶10} Thereafter, on October 10, 2012, appellant entered a plea of no contest to the offenses of operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and operating a motor vehicle with a concentration of .08 of one gram or more of weight of alcohol per 210 liters of breath in violation of R.C. 4511.19(A)(1)(d). Appellant was found guilty of such charges. The marked lanes charge was dismissed. Appellant was fined $375.00 and her driver's license was suspended for a period of one year. In addition, appellant was placed on probation for a period of one year under specified terms.

{¶11} Appellant now raises the following assignment of error on appeal:

{¶12} "I. THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE UNITED STATED CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 14, BY REFUSING TO SUPPRESS EVIDENCE OBTAINED DURING A TRAFFIC STOP BASED ON AN ANONYMOUS TELEPHONE TIP WHERE THE CLAIMS OF ERRATIC DRIVING WERE NOT CORROBORATED.

I

{¶13} Appellant, in her sole assignment of error, argues that the trial court erred in overruling her Motion to Suppress. We disagree.

{¶14} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the

role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks,* 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf,* 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams,* 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶15} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning,* 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein,* 73 Ohio App.3d 486, 597 N.E.2d 1141(4th Dist 1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See, *Williams,* supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93, 96, 620 N.E.2d 906 (8th Dist.1994).

{¶16} In the case sub judice, appellant challenges the stop of her vehicle. An investigative stop does not violate the Fourth Amendment to the United States Constitution if the police have reasonable suspicion that "the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). But it requires something more than an "inchoate and unparticularized suspicion or 'hunch." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).

{¶17} While appellant argues that the informant in this case was an anonymous informant, we disagree. Courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner,* 87 Ohio St.3d 295, 300, 1999-Ohio-68, 720 N.E.2d 507.

{¶18} As cautioned by the court in *Weisner* : "the United States Supreme Court discourages conclusory analysis based solely upon these categories, insisting instead upon a totality of the circumstances review, it has acknowledged their relevance to an informant's reliability. The court has observed, for example, that an anonymous informant is comparatively unreliable and his tip, therefore, will generally require independent police corroboration. *Alabama v. White,* 496 U.S. at 329, 110 S.Ct. at

2415, 110 L.Ed.2d at 308. The court has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[I]f an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates,* 462 U.S. at 233–234, 103 S.Ct. at 2329–2330, 76 L.Ed.2d at 545." Id at 300.

{¶19} The court In *Weisner*, in further addressing the higher reliability of the identified citizen informant, stated, in relevant part, as follows:

In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In *United States v. Pasquarille* (C.A.6, 1994), 20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to " 'idle rumor or irresponsible conjecture,' " quoting *United States v. Phillips* (C.A.5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant. " 'Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness.' " *Easton v. Boulder* (C.A.10, 1985), 776 F.2d 1441, 1449, quoting LaFave, Search and Seizure (1978) 586–587. See, also, *Edwards v. Cabrera* (C.A.7, 1995), 58 F.3d 290, 294.

Many Ohio appellate courts have also accorded the identified citizen witness higher credibility. In fact, several have used this principle to uphold a telephone tip made in fact situations nearly mirroring this one. In *State v. Loop* (Mar. 14, 1994), Scioto App. No. 93CA2153, unreported, 1994 WL 88041, for instance, the court held that a telephone call from a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving. The court reasoned that " '[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.' " *Id.* at 5, quoting 301 *State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91–CA–13, unreported, at 4, 1991 WL 270665. The *Carstensen* court found a stop based upon a 911 call describing a drunk driver sufficiently justified, although the informant there was unidentified. See, also, *Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87–CA–13, unreported, at 4–5, 1987 WL 20264; *State v. Jackson* (Mar. 4, 1999), Montgomery App. No. 17226, unreported, at 5, 1999 WL 115010, observing generally that " 'a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,' " quoting *Centerville v. Gress* (June 19, 1998), Montgomery App. No. 16899, unreported, at 4–5, 1998 WL 321014....

Courts have been lenient in their assessment of the type and amount of information needed to identify a particular informant. Many courts have found, for instance, that identification of the informant's occupation alone is sufficient.

In *United States v. Pasquarille, supra,* the court concluded that, although the informant's name was unknown, information that he was a transporter of prisoners was enough to remove him from the anonymous informant category. Likewise, in *Edwards v. Cabrera, supra,* the court was satisfied with the knowledge that the informant was a bus driver whose identity was ascertainable. See, also, *State v. Loop, supra.* Furthermore, at least one court has considered simple face-to-face contact to be enough. In *State v. Ramey* (1998), 129 Ohio App.3d 409, 717 N.E.2d 1153, the court held that an unnamed informant who flagged down an officer to provide information concerning a suspected drunk driver was in no way "anonymous": "There is nothing even remotely anonymous, clandestine, or surreptitious about a citizen stopping a police officer on the street to report criminal activity." *Id.* at 416, 717 N.E.2d at 1158.

{¶20} *Id* at 300-301.

{¶21} In the case sub judice, we find that the information provided by the caller was sufficient to identity the caller and to remove the caller from the category of an anonymous informant. We find that the caller provided sufficient information to Trooper Moran so as to be identifiable. As is clear from the record, the Trooper was later able to determine the caller's name and the name of the caller's passenger and, in fact, spoke with such passenger. In addition, as is stated above, the caller remained on the phone with the police dispatcher throughout the incident. We find such continued contact enhanced the caller's credibility. As noted by the court in *Weisner*, "greater credibility may be due an informant such as this who initiates and permits extended police

contact rather than one who phones in a tip and retreats from any further police interaction." *Id* at 302. Accordingly, we consider the citizen informant in this case to have identified herself sufficiently to accord her greater reliability than an anonymous informant.

{¶22} Having resolved this issue, we further find that the informant's basis of knowledge also furthers her credibility. Typically, a personal observation by an informant is due greater reliability than a secondhand description. *Weisner*, supra at 302, citing *Gates,* 462 U.S. at 233–234. "Here, the citizen's tip constituted an eyewitness account of the crime. [The citizen's] version of that night was not mere rumor or speculation—it was a firsthand report of the events as they happened. Also significant is the fact that the tip was an exact relay of the circumstances as they were occurring. Immediately upon witnessing the events, the citizen described them to the dispatcher. This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory." *Id.*

{¶23} Finally, we find that the informant's motivation supports the reliability of the tip. *Id.* In the case sub judice, the caller informed the dispatcher that appellant's vehicle was all over the road and that appellant's vehicle almost went into the median. The caller was reporting from the perspective of another motorist sharing the road with an erratic driver. As such, we can reasonably infer that the caller considered appellant to be a threat to both herself and to other motorists and, in calling the dispatcher, was motivated by a desire to eliminate a risk to public safety rather than by any dishonest or questionable goals.

{¶24}    In short, we find that the informant's tip was trustworthy and due significant weight. We further find that the informant was an identified citizen who based her knowledge upon observations made as the events occurred. The tip, therefore, merits a high degree of credibility and value such that it does not require independent police corroboration. The Trooper, therefore, was justified in making a investigative stop of appellant based upon such tip from an identified citizen informant.

{¶25}    Appellant's sole assignment of error is, therefore, overruled.

{¶26}    Accordingly, the judgment of the Licking County  Municipal Court is affirmed.

By: Baldwin, J.

Wise, P.J. and

Delaney, J. concur.

_____
HON. CRAIG R. BALDWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

CRB/dr