[Cite as *State v. Bagnoli*, 2015-Ohio-3314.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | By: Supreme Court Assignment, |
|  | : | Visiting Judge Julia L. Dorrian |
| -vs- | : |  |
|  | : | Case No. 2014CA00215 |
| WILLIAM MICHAEL BAGNOLI | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Stark County
                             Court of Common Pleas, Case No.
                             2014CR0891

JUDGMENT:                    Reversed and Remanded

DATE OF JUDGMENT ENTRY:      August 17, 2015

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN FERRERO                          JOHN GIUA
STARK COUNTY PROSECUTOR               301 Cleveland Avenue N.W.
BY: RENEE WATSON                      Canton, OH 44702
110 Central Plaza South, Ste. 510
Canton, OH  44702

*Gwin, P.J.*

{¶1}   Appellant, William Michael Bagnoli ["Bagnoli"] appeals the judgment of the Stark County Court of Common Pleas, overruling his motion to suppress.

*Facts and Procedural History*

{¶2}   On May 26, 2014, Bagnoli was at home. He and his wife Stephanie were going through a rough spot in their marriage and were trying to work it out.

{¶3}   Around 8:00 p.m., Bagnoli began packing his things and loading the car. Stephanie sat in the driver's seat begging him not to drive because he had been drinking. Meanwhile, their daughter called 1-800-GRAB-DUI to report Bagnoli's intention to drive. Stephanie called shortly thereafter. She testified that she told the dispatcher: "My husband is in the car trying to leave and he's been drinking all day."

{¶4}   Ohio State Highway Patrol Trooper Darin Banks was dispatched to Bagnoli's home. Dispatch advised Banks that the caller had advised that her husband had consumed several alcoholic beverages and was trying to leave the house in his car.

{¶5}   Trooper Banks drove to the Bagnoli home and waited for Bagnoli to leave. He watched Bagnoli leave the driveway, and then followed Bagnoli for a short distance before pulling him over. Banks observed no traffic violations before initiating the traffic stop. Banks detected an odor of alcohol coming from Bagnoli and Bagnoli admitted to consuming alcohol. Upon approaching Bagnoli, Banks observed that Bagnoli's eyes were bloodshot and glassy. Upon administering horizontal gaze nystagmus, Banks detected six of six clues. Bagnoli also had difficulty performing walk and turn and one-leg stand tests.

{¶6} At the suppression hearing, Banks explained that in 1-800-GRAB-DUI cases, he usually waits for the suspect to commit a traffic violation before initiating a traffic stop. In this case, however, he pulled Bagnoli over before witnessing a traffic violation because the reporting party was Bagnoli's wife and not an anonymous caller.

{¶7} Bagnoli was later charged with operating a vehicle under the influence, R.C. 4511.19(A)(1)(a), a felony of the third degree. Bagnoli filed a motion to suppress, arguing that Banks lacked reasonable articulable suspicion to initiate a traffic stop, as he had committed no traffic offenses.

{¶8} Following the suppression hearing, the trial court overruled Bagnoli's motion. The court found that because the information came from Bagnoli's wife and not an anonymous reporter, the information was reliable and Banks could initiate the stop without first observing a traffic violation.[1]

{¶9} Bagnoli subsequently entered a plea of no contest. The trial court convicted him and sentenced him to two years incarceration, a 15-year license suspension, six points on his driver's license and a fine of $2500.00.

*Assignment of Error*

{¶10} Bagnoli assigns one error,

{¶11} "I. THE TRIAL COURT ERRED BY DENYING THE DEFENDANT'S MOTION TO SUPPRESS."

*Analysis*

{¶12} In his sole assignment of error, Bagnoli argues that the trial court erred in denying his motion to suppress because Trooper Banks acted on a tip and observed no

---

[1] The trial court did not file a separate Judgment Entry overruling the Motion to Suppress.

traffic violations before initiating a traffic stop of Bagnoli's vehicle. Bagnoli argues, therefore, that Banks lacked reasonable, articulable suspicion to justify the traffic stop.

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist 1997); See, generally, *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas*, supra at 698, 116 S.Ct. at 1663.

### A. The Stop.

{¶14} The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4358, 894 N.E.2d 1204, ¶ 23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law enforcement official had a reasonable, articulable suspicion to stop a motorist. *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89(1996); *City of Dayton v. Erickson*, 76 Ohio St.3d 3, 665 N.E.2d 1091(1996).

### B. The "Tip"

{¶15} In order to determine if the trooper had a reasonable suspicion to stop Bagnoli, we must determine whether the information conveyed to the trooper was sufficient to provide a reasonable and articulable suspicion.

{¶16} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 720 N.E.2d 507, 1999-Ohio-68.

{¶17} In *Weisner,* the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:

The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[I]f an

unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates,* 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545.

In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In *United States v. Pasquarille (C.A.6,* 1994), 20 F .3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to " 'idle rumor or irresponsible conjecture," ' quoting *United States v. Phillips (C.A.5,* 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant."' Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness."' Easton *v. Boulder* (C.A.10, 1985), 776 F.2d 1441, 1449, quoting LaFave, Search and Seizure (1978) 586-587. See, also, *Edwards v. Cabrera (C.A.7,* 1995), 58 F.3d 290, 294.

Many Ohio appellate courts have also accorded the identified citizen witness higher credibility ... In *State v. Loop* (Mar. 14, 1994), Scioto App. No. 93CA2153, 1994 WL 88041... the court held that a telephone call from a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken

driving. The court reasoned that " '[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable." '*Id.* at 5, quoting *State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91-CA-13, *301 at *4, 1991 WL 270665.... See, also, *Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87-CA-13, at 4-5, 1987 WL 20264; *State v. Jackson* (Mar. 4, 1999), Montgomery App. No. 17226, at *5, 1999 WL 115010, observing generally that " 'a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,' " quoting *Centerville v. Gress* (June 19, 1998), Montgomery App. No. 16899, at *4-5, 1998 WL 321014."

*Weisner, supra.* at 300-301, 720 N.E.2d 507.

**{¶18}** The case at bar concerns an identified citizen informant, Stephanie Bagnoli. The question in this case turns upon the information that was conveyed to the trooper by Ms. Bagnoli.

**{¶19}** The trial court found that Trooper Banks was not told that Stephanie witnessed Bagnoli "drink a lot." T. Sept. 24, 2014 at 33. Further, the trooper was not informed that she thought he was impaired and that he should not drive. Id. The Court found "[t]he trooper didn't have individual evidence of impairment..." Id.

**{¶20}** In *Maumee,* the Ohio Supreme Court cautioned,

We emphasize that our categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review

of this informant's tip, weighing in favor of the informant's reliability and veracity.

87 Ohio St.3d at 302, 1999-Ohio-68, 720 N.E.2d 507.

{¶21} The Court in *Maumee,* considered the motivation of the tipster as a factor for the Court to consider in determining the reliability of the tip,

> We also believe that the informant's motivation supports the reliability of his tip. According to the evidence, the informant reported that Weisner was weaving all over the road. He made this report from the perspective of a motorist sharing the road with an another motorist driving erratically. We can reasonably infer from these circumstances that he considered Weisner a threat to him personally as well as to other motorists and that he was motivated, therefore, not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety.

87 Ohio St.3d at 302, 1999-Ohio-68, 720 N.E.2d 507.

{¶22} In the case at bar, no report of erratic driving was ever made or relayed to Trooper Banks; nor did he observe any in the short distance that he followed Bagnoli. Rather the only facts known to Trooper Banks were that the caller was Bagnoli's wife and that Bagnoli had consumed several alcoholic beverages. Neither the period for the consumption nor the type of alcoholic beverage was relayed to Trooper Banks.

{¶23} Careful review of the record indicates that although the tip was reliable, it lacked sufficient information to provide reasonable suspicion that Bagnoli was operating a motor vehicle while under the influence of alcohol. Stephanie failed to indicate that

she witnessed any traffic violations, unlawful behavior, or evidence of impaired driving. While a spouse may be motivated by concerns of safety, the opposite can also be found to be true. A spouse can falsely accuse the other spouse out of anger, jealously or an attempt to gain unfair advantage in a divorce or custody proceeding. Indeed, in the case at bar, Mrs. Bagnoli was upset because Bagnoli "decided he was going to leave us to go live with this 19-year old girlfriend." T. Sept. 24, 2014 at 8.

{¶24} Had the Trooper followed Bagnoli for a longer time and himself witnessed erratic driving, then there would indeed have been sufficient indicia of reliability to make the stop. "While deterrence of drunk driving remains of utmost importance, this policy needs to be carefully balanced against an individual's constitutional right to be free from unreasonable searches and seizures. An individual's Fourth Amendment right should not be forfeited simply to promote this public policy." *Maumee v. Weisner*, 87 Ohio St.3d 295, 303, 1999-Ohio-68, 720 N.E.2d 507(Sweeny, dissenting).

{¶25} Under the totality of the circumstances, the trooper lacked reasonable and articulable suspicion to stop Bagnoli's vehicle.

{¶26} Bagnoli's sole assignment of error is sustained.

{¶27} The judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J.,

Delaney, J., and

V. J., Dorrian,

concur