[Cite as *State v. Houston*, 2023-Ohio-4101.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2023-CA-00044 |
| DAVID R. HOUSTON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Appeal from Licking County Municipal
Court, Case No. 23-TRC-08565

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: November 13, 2023

APPEARANCES:

For Plaintiff-Appellee

J. MICHAEL KING
Assistant Law Director
40 West Main Street
Newark, OH 43055

For Defendant-Appellant

ALEXADRA J. POTH
73 North Sixth Street
Newark, OH 43055

*Gwin, P.J.*

**{¶1}** Appellant, David R. Houston ["Houston"] appeals the April 3, 2023 judgment of the Licking County Municipal Court, Licking County, Ohio overruling his motion to suppress.

*Facts and Procedural History*

**{¶2}** On October 6, 2022, Houston was charged with Operating a Vehicle Under the Influence, a misdemeanor of the first degree in violation of R.C. 4511.191(A), Motor vehicle accident resulting in damage to realty, a misdemeanor of the first degree in violation of R.C. 4549.03 and operation without reasonable control, a minor misdemeanor in violation of R.C. 4511.202.

**{¶3}** On February 3, 2023, Houston filed a request with the trial court to file an untimely motion to suppress. [Docket Entry No. 35]. The trial court granted the motion by Judgment Entry filed February 27, 2023. [Docket Entry No. 40].

**{¶4}** An oral hearing on Houston's motion was held on March 23, 2023. The state first called M.G. T. at 5. However, as the state began to question the witness, Houston stipulated to the admissibility and truthfulness of M.G.'s October 7, 2022 telephone statement to an Ohio State Highway Patrol trooper. T. at 5-6; State's Exhibit 2. The statement provides that M.G. was stopped at a red traffic light heading south on State Route 79 [SR 79] at the I-70 East bound ramp. While stopped, M.G. observed a white truck attempt to negotiate a turn from the off-ramp of I-70 eastbound to northbound SR 79. He estimated the truck's speed to be between 65-70 miles per hour. M.G. observed the truck attempt to make the turn, go off the roadway and strike a guardrail. He watched the driver exit the vehicle and start to walk north on SR 79. M.G. called the Ohio State

Highway patrol to report what he had observed. M.G. further provided a description of the driver as a white male, wearing a black hoodie with white lettering on the back. The jacket had "Newark" something written on the back, and the subject was wearing a white baseball cap. M.G. continued on to a Goodwill store and returned to the area after about five minutes, where he observed the driver in question walking on SR 79. M.G. called the OSHP a second time to report what he observed. Id. M.G. was still on the scene when the Trooper arrived.

{¶5} The state next called OSHP Trooper Darius Roberts. T. at 7. Prior to the start of questioning, Houston stipulated that the trooper was competent to testify pursuant to Evid. Rule 601(B)(4). Houston further stipulated that Trooper Roberts contacted him as seen in both the dash and body camera videos. T. at 8-9. Houston further stipulated to the foundation and admissibility of the video recordings. Id.

{¶6} Trooper Roberts testified that he was dispatched to an accident and the driver was reported to have left the scene on foot. He arrived in the area five minutes later, and proceeded northbound on SR 79. T. at 12- 13. He observed a pedestrian headed northbound and confirmed with dispatch the driver's description. T. at 13-14; 19; 23. At that time, he did not notice any other pedestrians in the area. Trooper Roberts, while behind Houston, activated his overhead lights for safety reasons. Trooper Roberts got out of his cruiser. He did not ask Houston to stop nor ever tell Houston that he was under arrest. T. at 15; 19. Houston apparently notice the cruiser and almost immediately turned and walked towards the trooper. T. at 14; 19-20. Trooper Roberts asked for, and was provided Houston's first name. T. at 14. The Trooper then asked if he had been involved in a crash, to which Houston responded, "yes." Id. Trooper Roberts indicated the

pedestrian he stopped matched the description he had heard and confirmed, and that he wanted to check on his welfare and return him to the accident scene. T. at 14-15.

{¶7} Trooper Roberts told Houston that he wanted to take him back to the accident scene. T. at 15. Before doing so, the Trooper asked Houston if he could perform a pat down search of his person for officer safety. Id. Trooper Roberts testified that Houston, "didn't have a problem with that." Id. Houston had to be reminded several times to keep his hands out of his pockets. T. at 16. During the search, it was discovered Houston had a suspected "crack pipe" in his hand. T. at 16-17; 20-21.

{¶8} The trial judge took the matter under advisement. On April 3, 2023, the trial judge filed a Judgment Entry overruling Houston's motion to suppress. Thereafter, Houston pled no contest to operating a vehicle under the influence, motor vehicle accident resulting in damage to realty, and operation without reasonable control. Docket Entry No. 63; T., May 8, 2023, *Change of Plea* at 2; 6-7. The trial court sentenced Houston to 30 days of incarceration, with 27 days suspended, 1-year probation and 3 days driver intervention program; a $375.00 fine and one-year driver license suspension. The trial court further imposed $25.00 fines on the motor vehicle accident resulting in damage to realty, and operation without reasonable control.

*Assignment of Error*

{¶9} Houston raises one Assignment of Error,

{¶10} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR IN DENYING THE DEFENDANT-APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

*Law and analysis*

**Standard of Appellate Review**

{¶11}  Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**Issue for appellate review:** *Whether Trooper Roberts had reasonable, articulable suspicion to justify a stop of Houston.*

{¶12}　In his sole assignment of error, Houston argues that the trial court erred in denying his motion to suppress and in finding that Trooper Roberts had a reasonable suspicion to stop him.

{¶13}　In order to determine if the trooper had a reasonable suspicion to stop Houston, we must determine whether the information conveyed to the trooper was sufficient to provide a reasonable and articulable suspicion.

{¶14}　The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer who lacks probable cause to arrest may, consistent with the Fourth Amendment, make an investigatory stop, including a traffic stop, of a person if the officer has reasonable suspicion to believe that the person is or is about to be engaged in criminal activity. *See Navarette v. California*, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014); *State v. Tidwell,* 165 Ohio St.3d 57, 2021-Ohio-2072, 175 N.E.3d 527, ¶19.

{¶15}　Reasonable suspicion for a *Terry* stop "is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). "Both factors—quantity and quality—are considered in the 'totality of the circumstances—the whole picture,' * * *, that must be taken into account when evaluating whether there is reasonable suspicion." Id., *quoting United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Police officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273, 122

S.Ct. 744, 151 L.Ed.2d 740 (2002), *quoting Cortez* at 418, 101 S.Ct. 690; *Tidwell,* 165 Ohio St.3d 57 at ¶20.

{¶16} The United States Supreme Court has "firmly rejected the argument 'that reasonable cause for an [investigative stop] can only be based on the officer's personal observation, rather than on information supplied by another person.'" (Brackets sic.) *Navarette*, 572 U.S. at 397, 134 S.Ct. 1683, 188 L.Ed.2d 680, *quoting Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Tidwell,* 165 Ohio St.3d 57 at ¶24.

{¶17} The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 1999–Ohio–68, 720 N.E.2d 507.

{¶18} In *Weisner*, the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:

The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a strong showing as to the other indicia of reliability may be unnecessary: '[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates*, 462 U.S. at 233–234, 103 S.Ct. at 2329–2330, 76 L.Ed.2d at 545. In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In *United States v.*

*Pasquarille* (C.A.6, 1994), 20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to "'idle rumor or irresponsible conjecture,'" *quoting United States v. Phillips* (C.A.5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant. "'Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness.'" *Easton v. Boulder* (C.A.10, 1985), 776 F.2d 1441, 1449, *quoting LaFave, Search and Seizure* (1978) 586–587. *See, also, Edwards v. Cabrera* (C.A.7, 1995), 58 F.3d 290, 294.

Many Ohio appellate courts have also accorded the identified citizen witness higher credibility ... In *State v. Loop* (Mar. 14, 1994), Scioto App. No. 93CA2153, 1994 WL 88041 ... the court held that a telephone call from a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving. The court reasoned that "'[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.'" Id. at 5, *quoting State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91–CA–13, *301 at *4, 1991 WL 270665 .... *See, also, Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87–CA–13, at 4–5, 1987 WL 20264; *State v. Jackson* (Mar. 4,

1999), Montgomery App. No. 17226, at *5, 1999 WL 115010, observing generally that "'a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,'" *quoting Centerville v. Gress* (June 19, 1998), Montgomery App. No. 16899, at *4–5, 1998 WL 321014."

*Weisner, supra*. at 300–301, 720 N.E.2d 507; *State v. Bagnoli,* 5th Dist. Stark No. 2014CA00215, 2015-Ohio-3314, ¶17. In *Weiser,* the Ohio Supreme Court held:

Having resolved this issue, we emphasize that our categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity. Continuing our review, we believe that the informant's basis of knowledge also furthers his credibility. Typically, a personal observation by an informant is due greater reliability than a secondhand description. *Gates*, 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545. Here, the citizen's tip constituted an eyewitness account of the crime. His version of that night was not mere rumor or speculation-it was a firsthand report of the events as they happened. Also significant is the fact that the tip was an exact relay of the circumstances as they were occurring. Immediately upon witnessing the events, the citizen described them to the dispatcher. This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory.

We also believe that the informant's motivation supports the reliability of his tip. According to the evidence, the informant reported that Weisner was weaving all over the road. He made this report from the perspective of a motorist sharing the road with another motorist driving erratically. We can reasonably infer from these circumstances that he considered Weisner a threat to him personally as well as to other motorists and that he was motivated, therefore, not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety.

Taken together, these factors persuade us that the informant's tip is trustworthy and due significant weight. The informant was an identified citizen who based his knowledge of the facts he described upon his own observations as the events occurred. As a result, his tip merits a high degree of credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police corroboration. *Accordingly, the dispatch based upon this tip was issued on sufficient facts to justify Patrolman Roberts's investigative stop.*

*Maumee v. Weisner*, 87 Ohio St.3d at 295 (emphasis added).

**{¶19}** In the case at bar, a careful review of the record indicates that M.G. contacted the OSHP on two occasions to report his observations. We know that he gave his name and contact information to the dispatcher because a trooper contacted M.G. by telephone the next day to take his statement. The statement to dispatch at the time, gave a description of the individual who had gotten out of the white truck after striking the guardrail as a white male wearing a black hoodie with white lettering on the back and

wearing a white baseball cap. M.G. informed dispatch that the male was walking northbound on SR 79. M.G. left and returned after five minutes and remained until the trooper contacted Houston. M.G. appeared in court for the suppression hearing. The defense stipulated to the truthfulness of M.G.'s statement to the OSHP. Accordingly, we consider the citizen informant in this case to have identified himself sufficiently to accord him greater reliability than an anonymous informant.

{¶20} Typically, a personal observation by an informant is due greater reliability than a secondhand description. *Weisner, supra* at 302, *citing Gates*, 462 U.S. at 233–234. Also significant is the fact that the tip was an exact relay of the circumstances as they were occurring. Immediately upon witnessing the events, M.G. described them to the dispatcher. This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory. Id. Finally, we find that M.G.'s motivation supports the reliability of the tip. Id. M.G. made his report from the perspective of a motorist sharing the road with another motorist driving.

{¶21} In short, we find that M.G.'s tip was trustworthy and due significant weight. We further find that the informant was an identified citizen who based his knowledge upon observations made as the events occurred. The tip, therefore, merits a high degree of credibility and value such that it does not require independent police corroboration. The Trooper, therefore, was justified in making an investigative stop of Houston based upon the tip from M.G. *State v. Atkins,* 5th Dist. Licking No. 12-CA-90; 2013-Ohio-2446, ¶24.

{¶22} Houston's sole assignment of error is overruled.

{¶23} Accordingly, the judgment of the Licking County Municipal Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur