[Cite as *State v. Clymer*, 2024-Ohio-1877.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| THOMAS CLYMER, | : | | Case No. 23CA004 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |


CHARACTER OF PROCEEDING:                Appeal from the Holmes County
                                        Municipal Court, Case No. 22 TRC
                                        719




JUDGMENT:                               Affirmed




DATE OF JUDGMENT:                       May 16, 2024




APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

ROBERT K. HENDRIX                       JEFFREY G. KELLOG
Assistant Prosecuting Attorney          5 South Washington Street
Holmes County, Ohio                     Millersburg, Ohio 44654
164 E. Jackson Street
Millersburg, Ohio 44654

*Baldwin, J.*

{¶1} The appellant appeals the trial court's denial of his motion to suppress evidence.

## STATEMENT OF THE FACTS AND THE CASE

{¶2} On August 23, 2022, the appellant was driving southbound on SR 557 in Holmes County when he came upon a semi-truck that was stopped. Construction work was being performed on the roadway, and ODOT supervisor C.S. was on-site monitoring the project.

{¶3} C.S. was contacted by a flagger, who told him that a vehicle later identified as the appellant's attempted to go around stopped traffic and was "giving the flaggers some issues". C.S. proceeded to the appellant's location to speak with him regarding why he was attempting to go around stopped traffic in the work zone and his interaction with the flagger. The appellant complained about the flagger and the construction zone sign placement, and told C.S. that he thought the semi-truck was stopped for a delivery or some other purpose. The appellant appeared to become agitated, and C.S. offered to give the appellant his supervisor's telephone number. The conversation concluded when the southbound traffic was released by the flagger, and the appellant proceeded south on SR 557.

{¶4} C.S. called the Holmes County Sheriff's Department, identified himself, and reported the incident. He described the appellant's vehicle and provided a license number. He stated that the flagger thought that appellant might be drinking, and that he was going to follow the appellant to make sure he got through the construction zone

without hitting anyone. C.S. testified at the suppression hearing that, as he followed the appellant, he observed the appellant engage in "some swerving"

{¶5} C.S. followed the appellant through the construction zone and beyond, to the intersection of SR 557 and SR 93 between Baltic and Sugarcreek. Once at the intersection, C.S. traveled south toward Baltic and the appellant headed north toward Sugarcreek. C.S. proceeded back to the work area.

{¶6} Upon returning to the work zone, C.S. was told that the appellant was a few vehicles behind him. He called the Sheriff's Department again to report that the appellant was back in the area, and "seemed" to want to go back to the flagger, a female, who had first stopped him. C.S. pulled off to the side, and the appellant drove past. C.S. started following the appellant, again, to ensure that he did not hit anybody.

{¶7} Lieutenant Tim Stryker of the Holmes County Sheriff's Department was monitoring dispatch notes from the calls on his mobile data terminal and responded to the area. He spoke directly with C.S. on the telephone. During the call, the appellant pulled into a business and C.S. pulled into another drive at the same business. While C.S. was on the telephone with Lieutenant Stryker he described the appellant's vehicle and provided its location, discussed the incident, and told Lieutenant Stryker that he had observed the appellant engage in "some erratic driving." The appellant then left the parking lot, giving C.S. "the finger" as he passed him.

{¶8} Lieutenant Stryker, who had initially been notified by dispatch of a possible drunk driver driving through a construction zone, and then subsequently notified that the same driver had re-entered the construction zone, identified the appellant's vehicle and followed him north on SR 557. Lieutenant Stryker testified at the suppression hearing that

"[i]t was the second call that might [sic] raised my concerns that something was going on because we were told that he's back again causing more issues with the flaggers." He followed the appellant for a couple of miles at a speed of 38 mph, which was consistent with the speed of other traffic also traveling northbound. Lieutenant Stryker did not personally observe any traffic violations or erratic driving. The appellant pulled into a business and parked. Lieutenant Stryker pulled directly behind the appellant, parked and exited his vehicle.

**{¶9}** Lieutenant Stryker stated that one of the potential violations he was investigating was disorderly conduct, and expressed concern that the appellant may have been creating issues in a road construction work zone "that's in a very high traveled area with a lot of individuals [and] tourists traveling through that area" In addition, Lieutenant Stryker was concerned with possible menacing regarding the workers in the construction zone, particularly the female flagger with whom the appellant appeared to have an issue.

**{¶10}** Upon encountering the appellant, Lieutenant Stryker noticed a strong odor of alcohol and bloodshot, glassy eyes. In addition, the appellant admitted to having consumed alcohol. The appellant submitted to a breathalyzer test, at which time he blew a 0.159. The appellant was charged with operating a vehicle while intoxicated in violation of R.C. 4511.19(A)(1)(D) and (A)(1)(A), to which he pleaded not guilty.

**{¶11}** On November 9, 2022, the appellant filed a Motion for Order Suppressing Evidence in which he sought to suppress any and all evidence the appellee intended to introduce at trial, alleging that all evidence was the product of an illegal search and seizure. The appellee responded, and a hearing was conducted on the suppression issue

on December 6, 2022. The trial court permitted the parties to submit additional briefing on the issue of citizen informants.

**{¶12}** On April 14, 2023 the trial court issued a Judgment Entry denying the appellant's Motion for Suppressing Evidence. On April 25, 2023, the appellant changed his plea to no contest. He was found guilty, and was sentenced to fifteen days in jail with twelve suspended, a one year license suspension, and one year of probation. The appellant indicated his intent to appeal, and the trial court stayed his entire sentence pending appeal.

**{¶13}** On May 23, 2023, the appellant filed a timely Notice of Appeal, and sets forth the following sole assignment of error:

**{¶14}** "I. THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE."

### STANDARD OF REVIEW

**{¶15}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 154–155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995); *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside,* supra; *Dunlap,* supra; *State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998); *State v. Medcalf,* 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this Court has accepted those facts as true, it must

independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* supra, citing *State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997); See, generally, *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a *de novo* standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas,* supra at 698, 116 S.Ct. at 1663.

## ANALYSIS

{¶16} The issue in this case is whether Lieutenant Stryker's reliance upon a citizen informant provided him with reasonable cause to stop the appellant, an issue that was recently discussed by this Court in *State v. Houston,* 5th Dist. Licking No. 2023-CA-00044, 2023-Ohio-4101. The *Houston* Court, citing the seminal case of *Maumee v. Weisner,* 87 Ohio St.3d 295, 1999-Ohio-68, 720 N.E.2d 507, stated:

> The courts have recognized three categories of informants: (1) citizen informants; (2) known informants, i.e., those from the criminal world who have previously provided reliable tips; and (3) anonymous informants, who are comparatively unreliable. *Maumee v. Weisner*, 87 Ohio St.3d 295, 300, 1999–Ohio–68, 720 N.E.2d 507.
>
> In *Weisner*, the Ohio Supreme Court discussed the credibility to be given to an identified citizen tipster:
>
> The [United States Supreme Court] has further suggested that an identified citizen informant may be highly reliable and, therefore, a

strong showing as to the other indicia of reliability may be unnecessary: '[I]f an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability-we have found rigorous scrutiny of the basis of his knowledge unnecessary.' *Illinois v. Gates*, 462 U.S. at 233–234, 103 S.Ct. at 2329–2330, 76 L.Ed.2d at 545. In light of these principles, federal courts have routinely credited the identified citizen informant with greater reliability. In *United States v. Pasquarille* (C.A. 6, 1994), 20 F.3d 682, 689, for instance, the Sixth Circuit presumed the report of a citizen informant to be reliable because it was based on firsthand observations as opposed to " 'idle rumor or irresponsible conjecture,' " *quoting United States v. Phillips* (C.A. 5, 1984), 727 F.2d 392, 397. Likewise, the Tenth Circuit has held that the statement of an ordinary citizen witness is entitled to more credence than that of a known informant. " 'Courts are much more concerned with veracity when the source of the information is an informant from the criminal milieu rather than an average citizen * * * in the position of a crime * * * witness.' " *Easton v. Boulder* (C.A. 10, 1985), 776 F.2d 1441, 1449, *quoting LaFave, Search and Seizure* (1978) 586–587. *See, also, Edwards v. Cabrera* (C.A. 7, 1995), 58 F.3d 290, 294.

Many Ohio appellate courts have also accorded the identified citizen witness higher credibility ... In *State v. Loop* (Mar. 14, 1994), Scioto App. No. 93CA2153, 1994 WL 88041 ... the court held that a telephone call from

a citizen stating that a motorist might be having a seizure was sufficient to justify an investigative stop that produced evidence of drunken driving. The court reasoned that " '[i]nformation from an ordinary citizen who has personally observed what appears to be criminal conduct carries with it indicia of reliability and is presumed to be reliable.' " Id. at 5, *quoting State v. Carstensen* (Dec. 18, 1991), Miami App. No. 91–CA–13, \*301 at \*4, 1991 WL 270665 .... *See, also, Fairborn v. Adamson* (Nov. 17, 1987), Greene App. No. 87–CA–13, at 4–5, 1987 WL 20264; *State v. Jackson* (Mar. 4, 1999), Montgomery App. No. 17226, at \*5, 1999 WL 115010, observing generally that " 'a tip from an identified citizen informant who is a victim or witnesses a crime is presumed reliable, particularly if the citizen relates his or her basis of knowledge,' " *quoting Centerville v. Gress* (June 19, 1998), Montgomery App. No. 16899, at \*4–5, 1998 WL 321014."

*Weisner, supra.* at 300–301, 720 N.E.2d 507; *State v. Bagnoli,* 5th Dist. Stark No. 2014CA00215, 2015-Ohio-3314, ¶17. In *Weisner,* the Ohio Supreme Court held:

> Having resolved this issue, we emphasize that our categorization of the informant as an identified citizen informant does not itself determine the outcome of this case. Instead it is one element of our totality of the circumstances review of this informant's tip, weighing in favor of the informant's reliability and veracity. Continuing our review, we believe that the informant's basis of knowledge also furthers his credibility. Typically, a personal observation by an

informant is due greater reliability than a secondhand description. *Gates*, 462 U.S. at 233-234, 103 S.Ct. at 2329-2330, 76 L.Ed.2d at 545. Here, the citizen's tip constituted an eyewitness account of the crime. His version of that night was not mere rumor or speculation-it was a firsthand report of the events as they happened. Also significant is the fact that the tip was an exact relay of the circumstances as they were occurring. Immediately upon witnessing the events, the citizen described them to the dispatcher. This immediacy lends further credibility to the accuracy of the facts being relayed, as it avoids reliance upon the informant's memory.

We also believe that the informant's motivation supports the reliability of his tip. According to the evidence, the informant reported that Weisner was weaving all over the road. He made this report from the perspective of a motorist sharing the road with another motorist driving erratically. We can reasonably infer from these circumstances that he considered Weisner a threat to him personally as well as to other motorists and that he was motivated, therefore, not by dishonest and questionable goals, but by his desire to eliminate a risk to the public's safety.

Taken together, these factors persuade us that the informant's tip is trustworthy and due significant weight. The informant was an

identified citizen who based his knowledge of the facts he described upon his own observations as the events occurred. As a result, his tip merits a high degree of credibility and value, rendering it sufficient to withstand the Fourth Amendment challenge without independent police corroboration. *Accordingly, the dispatch based upon this tip was issued on sufficient facts to justify Patrolman Roberts's investigative stop.*

*Maumee v. Weisner*, 87 Ohio St.3d at 295 (emphasis added).

*Houston* at ¶17-18.

**{¶17}** In this case, a careful review of the record illustrates that C.S. contacted the Holmes County Sheriff's Department dispatch twice. He gave his name and contact information to law enforcement officials, and thereafter spoke directly with Lieutenant Stryker. His statements to law enforcement officials included information received from work site flaggers that the appellant had attempted to drive through the construction work zone in contravention of the flagger's instructions, and stated that the flagger thought appellant might be drinking. C.S. spoke with the appellant, and thereafter followed the appellant through the construction zone to ensure that he did not hit anyone. As he was following the appellant, C.S. observed the appellant engage in "some erratic driving." Finally, C.S. told Lieutenant Stryker that it appeared the appellant was attempting to return to confront the female flagger with whom he had originally had contact.

**{¶18}** Citizen informant C.S. thus identified himself to law enforcement such that greater reliability could be accorded to him than to an anonymous informant. In addition, the tip relayed by C.S. was an exact relay of events as they were occurring. The

immediacy with which C.S. relayed the events to law enforcement lends further credibility to the accuracy of the information provided to law enforcement. Finally, C.S.'s motivation – ensuring safety within a road construction work zone – supports the reliability of his tip.

**{¶19}** Based upon C.S.'s tip, Lieutenant Stryker believed that the appellant had committed a traffic offense when he pulled around a semi-truck that was stopped in the construction zone. In addition, he was concerned about the appellant's possible disorderly conduct, and expressed concern that the appellant may have been creating issues in a road construction work zone "that's in a very high traveled area with a lot of individuals [and] tourists traveling through that area" Finally, Lieutenant Stryker was concerned with possible menacing regarding the workers in the construction zone, particularly the female flagger with whom the appellant appeared to have an issue.

**{¶20}** We therefore find that C.S.'s tip was trustworthy and due significant weight, and merits a high degree of credibility. Lieutenant Stryker was, therefore, justified in stopping the appellant based upon the tip. Accordingly, we find the appellant's sole assignment of error to be without merit.

**CONCLUSION**

{¶21} Based upon the foregoing, the appellant's sole assignment of error is overruled, and the judgment of the Holmes County Municipal Court is hereby affirmed.

By: Baldwin, J.

Gwin, P.J. concur

Hoffman, J. concurs separately.

*Hoffman, J., concurring*

{¶22} I concur in the majority's disposition of Appellant's sole assignment of error, but for a reason different from the majority.

{¶23} I begin with a point of agreement. I, too, find C.S. is a reliable, identified citizen informant. I also find the roadway flagger, who relayed information to C.S., would qualify as a citizen informant. Where I disagree with the majority is its conclusion the information relayed provided reasonable grounds to conduct an investigatory stop of the Appellant's vehicle.

{¶24} The roadway flagger told C.S. Appellant "might be" drinking without any further explanation as to why she came to such conclusion. C.S. stated he observed "some erratic driving" while Appellant proceeded through the construction zone, again without further specific description or explanation of what observations led him to that conclusion. But, of significance, is the fact such conclusion was offset, indeed negated, by the testimony of Lt. Stryker who later followed Appellant for a couple miles and did not observe any traffic violation or erratic driving.

{¶25} Lt. Stryker's concern about Appellant's "possible" disorderly conduct and "possible" menacing of the flagger, which apparently was based on Appellant's returning to the construction zone and giving the flagger "the finger," is nothing more than that; i.e., possibilities. Giving someone the finger is protected free speech and insufficient, in and of itself, to constitute disorderly conduct or menacing.

{¶26} Under the facts of this case, I find Lt. Stryker did not have reasonable articulable suspicion of criminal activity to justify a "stop" of Appellant's vehicle.

{¶27} Nonetheless, I concur in the majority's decision to overrule Appellant's assignment of error because Lt. Stryker did not "stop" Appellant's vehicle. Appellant parked his vehicle at a business, not at the direction of Lt. Stryker. Lt. Stryker's encounter with Appellant, therefore, was not constitutionally prohibited and any evidence derived therefrom was legally obtained and supported a finding of probable cause to arrest.

[Cite as *State v. Clymer*, 2024-Ohio-1877.]